JOHN DONOHO, Appellant, *v.* VULCAN IRON-WORKS ET AL., Respondents.

7 447
d175s³417
e175s³418

### July 1, 1879.

1. In an action for damages for injuring a young child, where the evidence is conflicting, and there was evidence tending to show that the careless act of the child directly caused the injury, without any negligence whatever of the defendant, an instruction that the age of the child shall be taken into consideration, and ignoring the defendant's hypothesis of fact, is properly refused.

2. What is reasonable care may depend in a great measure upon the age of the person injured.

3. An instruction that if at the time of the injury the plaintiff was using the street to play in, and not for travel, he cannot recover, is misleading and erroneous.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*
A. R. TAYLOR, for appellant.
CLINE, JAMISON & DAY and LEVERETT BELL, for respondents.

LEWIS, P. J., delivered the opinion of the court.
Plaintiff, a boy eleven years of age, sues for damages on

account of the falling of a bank of earth upon him in Clay Street in the city of St. Louis. The street had not been graded or paved, and the defendant Vulcan Iron-Works had for several years been obtaining sand from it by excavations which left standing the bank of earth referred to. The petition alleges that by the negligence of defendant's servants in undermining and in leaving the bank without proper safeguards, it was caused to fall, whereby the plaintiff was seriously injured. The plaintiff's testimony tended to prove that the street was used for travel, and was necessary for the convenience of the public; that on a Sunday, next after the Saturday on which defendant's employees had been excavating, the plaintiff, being on an errand for his mother, stopped to watch some boys who were playing at the foot of the bank, when the bank fell, killed one boy, and seriously injured the plaintiff.

The defendant's testimony tended to show that the bank was caused to fall by the boys digging into it, in which the plaintiff joined them; that the plaintiff, at the time, was not using the street for purposes of travel, but only as a play-ground and for his own amusement; that the street was not in a condition to be used for vehicles; and that the plaintiff had long resided in the neighborhood, and well knew the condition of the bank.

The city of St. Louis was joined as a co-defendant with the Vulcan Iron-Works. The verdict of the jury was for both defendants.

The court refused to give the following instruction, asked for by the plaintiff: —

" The court instructs the jury that, in considering the question as to whether or not plaintiff contributed by his own act to cause the injury to himself mentioned in the petition, they should take into consideration his age and discretion; and if the jury find from the evidence that plaintiff was of the age of eleven years, and did not possess the discretion of an adult or grown person at the time of the

injury, then the jury should consider these facts in determining whether or not plaintiff was guilty of contributory negligence, at the time of said injury, that contributed to cause said injury.''

In view of the conflicting testimony, and the opposing theories of fact maintained by the parties touching the fall of the bank, we cannot say that there was error in the refusal of this instruction as it stands. But, as the judgment must be reversed on other grounds, we think it not improper to remand the cause, with our views upon the question partially presented in the instruction.

If, as the defendants claim, the bank was left by the Vulcan Iron-Works in an entirely safe condition, and the digging into it by boys on the next day (whether the plaintiff participated or not) was the direct cause of the fall, then the age and capacity of the plaintiff are wholly immaterial to the question of the defendants' liability. If the act of an infant bring disaster upon itself, there is no more responsibility on the owner or manager of the particular instrumentality, who is innocent of negligence in its use or exposure, than there would be if the person injured were of mature years. Such is substantially the theory of the defendants in the present case. If their hypothesis of fact were to be adopted by the jury, the instruction in question would be wholly out of place. The fault lies in its too general terms, which make it alike applicable to every hypothesis of fact in the case.

The plaintiff's theory of fact appears to be that the employees of the Vulcan Iron-Works, by undermining and excavating sand, left the bank without sufficient support, so that it would be liable to fall, at any moment afterwards, from that cause alone; that the digging by the boys had no influence in causing the fall, or that, if it had any, it was utterly insignificant, and unworthy of consideration in connection with the direct and potential cause already present; that the plaintiff's contributory negligence, if any,

consisted merely in his standing near the dangerous bank, or playing at its base, when the fall was manifestly imminent. With some such hypothesis as this, by way of qualification, the rule of discrimination on account of immature years would be appropriate. Negligence, whether contributory or otherwise, implies a failure of duty. There can be no failure of duty where there is an insufficiency of mental capacity to comprehend it. It would be monstrous to impute contributory negligence to a child of two years, which is crushed in the mere act of standing near to a bank in danger of falling; while the presumed experience of an adult might justify the charge of criminal recklessness in deliberately awaiting the catastrophe, within its certain reach. Even a boy of eleven years might have far less capacity than a grown man to apprehend a likelihood or remote possibility of accident under such circumstances. A jury cannot be told, of course, that such a boy is incapable of negligence. But they should be permitted to consider the supposed limit of capacity attending immature years in connection with other facts bearing upon the question of reasonable care and prudence in his conduct. In *Railroad Company* v. *Gladmon*, 15 Wall. 401, the United States Supreme Court declares that " the rule in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years, is quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge. The caution required is according to the maturity and capacity of the child, a matter to be determined in each case by the circumstances of that case." The same rule was affirmed in *Railroad Company* v. *Stout*, 17 Wall, 657. In *Lynch* v. *Smith*, 104 Mass. 52, Chapman, C. J., said : " Certainly the jury could not find that a boy nine years old must exercise the capacity of an adult. But it

was implied that if it was proper for him to be there it was only necessary for him to exercise such capacity as he had. School-children who are properly sent to school unattended must use such reasonable care as school-children can. It must be reasonable care adapted to the circumstances, or, in other words, the ordinary care of school-children."

On the application of defendant the City of St. Louis, the court gave two instructions, of which the substance appears in the following : —

"If the jury believe from the evidence that the plaintiff, Donoho, at the time he received the injuries complained of, was, in company with other boys, using Clay Street for the purpose of playing or amusing themselves thereon, and not for the purpose of passing over or travelling on said street, then, notwithstanding he was injured, he cannot recover against the City of St. Louis."

It is a duty of municipal corporations to keep the streets in a reasonably safe condition for use by the public in travel and intercommunication between different parts of the city. From this duty results a responsibility for personal injuries caused by any failure to perform it. If a street be used for purposes wholly foreign to its legitimate objects, and injury results from a defective adaptation, or a non-adaptation to such purposes, there can be no such responsibility. Thus, if a circus-man or a juggler monopolizes a space in a public street for exhibiting his show, and while so doing suffers an injury resulting from a defective construction of the highway, he cannot therefore have redress against the municipality. But the principle here involved must have reasonable interpretation. The street is for travel. But does it follow that every temporary suspension of actual locomotion shall suspend also, or destroy, the whole doctrine of municipal liability for failure to perform a public duty?

Our attention is called to *Stinson* v. *Gardiner*, 42 Me. 248, and *Blodgett* v. *City of Boston*, 8 Allen, 237. In the first-mentioned case it was decided that "when children

use a part of the public road for their sports, the town or city through which the way passes is not responsible for injuries received by any of the children so engaged, though the injuries may result from a defect in the road.'' Tenney, C. J., said : '' The public have no right in a highway, excepting the right to pass and repass thereon.'' Quoting from *Stackpole* v. *Healy*, 16 Mass. 33, he added : '' Subject to the right of mere passage, the owner of the road is still absolute master. The horseman cannot stop to graze his steed without being a trespasser ; it is only in case of inevitable, or at least accidental, detention that he can be excused even in halting for a moment.'' In the other case the same general doctrine was held, with this explanation : '' We by no means intend to say that a child who receives an injury caused by a defect or want of repair in a road or street, while passing over or through it, would be barred of all remedy against a town merely because at the time of the occurrence of the accident he was also engaged in some childish sport or amusement. There would exist in such a case the important element that the person injured was actually travelling over the way.'' Other cases are referred to from the New England States, in which the same rigid doctrine is announced.

The important fact must be observed that all these decisions are placed upon an interpretation of statutory language. The statute requires the town to keep the highways in repair, so that they may be '' safe and convenient for *travellers* at all seasons of the year.'' The word *travel*, or *traveller*, expresses in each case a distinct statutory limitation. The whole liability is measured by the statute, and cannot go beyond it. But in Missouri the liability, if any, rests upon general principles, applying to the municipal dereliction of a legal duty. The duty is inferred from the grant of an exclusive power to '' construct and keep in repair all bridges, streets, sewers, and drains, and to regulate the use thereof,'' etc. City Charter of St. Louis, art. 3, sect. 26. The use of the streets to be so con-

structed and kept in repair is not limited by any particular word or words. The purposes for which streets are made, however, are sufficiently understood. They embrace the general convenience of the public in out-of-door locomotion and intercommunication, according to the well-known habits of the community. It would shock the understanding of any citizen to be told that when on the street he must be perpetually moving, and that he cannot stop an instant to greet a friend without becoming a trespasser. Such a law may be evolved, by strict interpretation, from the several New England statutes. But it cannot have a footing in Missouri.

If the plaintiff had abandoned his errand for the time being and was actually engaged with the other boys in excavating the bank for amusement when the accident occurred, there might be room for an application of the doctrine that the city was no guarantor of the personal safety of one thus misusing the public thoroughfare. But if he was merely pausing in his errand because his attention was attracted for a moment to the occupation of his playmates, there can be no fairness in asserting that in that moment he was not properly on the highway, or using it for the purposes of its creation. The instructions as given might well mislead the jury to this erroneous conclusion. The judgment will be reversed and the cause remanded. All the judges concur.