JOHN ANDERSON v. THE JERSEY CITY ELECTRIC LIGHT COMPANY.

Argued March 2, 1899—Decided June 12, 1899.

One who uses, controls and manages an electric current of high destructive power in a place where it is reasonably probable that others must enter to work, owes to each person who so enters a duty to use reasonable care to maintain proper insulation of such current.

On demurrer to the declaration.

The second count of the declaration is as follows: "Also for that whereas the said defendant, the Jersey City Electric Light Company, heretofore, to wit, on the twenty-fifth day of August, eighteen hundred and ninety-eight, was *the owner* and did *operate, manage* and *control* a certain electric light and power plant with its machinery, poles, wires and appliances in the city of Jersey City, in the county of Hudson aforesaid.

"And whereas the said defendant, on the day and year aforesaid, in the city of Jersey City, in the pursuit of its said business, had *the management* and *control* of a *certain* line of

electric light and power wires extending through and along various streets in the city of Jersey City, in the county of Hudson aforesaid, and into various houses and buildings located on the line of said streets, one section or portion of which line extended through and along a certain street or avenue in said city, called or known as Bergen avenue, over which said street the said line was suspended by poles, and from said poles on Bergen avenue said wires were strung or conducted to and into a certain building known as the Carteret Club House; and said wires consisting of two lines of wires were strung or suspended from said line of wires to a certain light or air shaft in said Carteret Club House to a point in the easterly side of said light shaft, and were then continued in a downward course to a convertor and transformer on the westerly side of said air shaft and within a short distance of the floor or bottom of said shaft, which floor or bottom of said shaft formed the roof of the toilet-room in said building, and said two wires were then turned eastwardly and southwardly and upwards into the southerly wall of said light shaft, forming a network of wires in said shaft in said building known as the Carteret Club House.

"And whereas the said defendant, on the twenty-fifth day of August, eighteen hundred and ninety-eight, was accustomed and for a long space of time theretofore, to wit, for the space of two years had been accustomed *to use* said line of wires for the purposes of furnishing light and power to buildings and manufactories in said city of Jersey City by electricity, and to that end was accustomed and for the said space of time had been accustomed *to pass* and *did pass* through said line of wires, and through each and every wire of said line in said light shaft, a strong and powerful current of electricity, dangerous to the life of any human being who might come in contact therewith.

"And the plaintiff avers that at the time the defendant so placed its wires in said light shaft of said Carteret Club House it well knew it would be necessary for mechanics and others to enter and work therein, in and about the care

and repair of said light shaft, and that it was the duty of the said defendant to keep the said wires safely, securely and completely insulated so that workmen and others lawfully entering in and upon said light shaft should not be injured by contact therewith; but that the said defendant, notwithstanding such knowledge, and disregarding its said duty in the premises, carelessly and negligently maintained the said wires, and carelessly and negligently protected the same by defective insulation, and carelessly and negligently failed to protect and cover said wires with safe or sufficient insulating material, and carelessly and negligently permitted the covering used thereon to become worn, defective and wholly insufficient to render them safe to persons coming in contact therewith, and the plaintiff further says that on the day and year aforesaid, at Jersey City, in the county of Hudson aforesaid, while the said plaintiff was lawfully engaged at work in repairing and refitting the said air shaft, he, the said plaintiff, came in contact with one of the said wires without any fault, carelessness or negligence on his part, and thereby received said current into his body, through and by means of which he, the said plaintiff, was greatly shocked, burned, hurt and wounded, maimed, sick, sore and disordered, and so remained and continued for a long space of time, to wit, from thence hitherto, during all which time he was hindered and prevented from performing and transacting his lawful affairs and business during that time to be done and transacted, and will continue so for the remainder of his life, and also was forced to pay, lay out, and expend, a large sum of money, to wit, the sum of one thousand dollars in and about endeavoring to be healed of his burns, wounds, sickness and disorder, and in caring for himself, to wit, at Jersey City aforesaid.

"Wherefore and by reason of the premises, he, the said plaintiff, saith that by the wrongful acts, omissions and negligence of the said defendant, the said plaintiff is injured and hath sustained damage in the sum of twenty thousand dollars, and therefore he brings his suit," &c.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the plaintiff, *Joseph Anderson.*

For the defendant, *Flavel McGee.*

The opinion of the court was delivered by

GARRISON, J.   The second count of the declaration, to which a general demurrer has been filed, is, in my opinion, good; it sets out facts from which a duty arose from the defendant to the plaintiff and negatives the performance of that duty.   In fine, the demurrer establishes this state of facts, viz., that the defendant used for its purposes wires that it had placed in a light shaft where it knew that the class of laborers to which the plaintiff belonged would enter to work; that these wires were under the control and management of the defendant who passed through them a current of electricity dangerous to a human being, and that it failed to maintain a proper insulation of this current whereby plaintiff while working in the shaft was injured.

Now, the elemental rule is that whoever uses a highly-destructive agency is held to a correspondingly high degree of care.   Care in this sense means more than mere mechanical skill, it includes circumspection and foresight with regard to reasonably probable contingencies.

The demurrer admits in effect that the defendant knew that the plaintiff would enter the shaft and work in the vicinity of its wires, and that it did not use reasonable care to render them safe in view of their location, whereby the plaintiff was injured.

A good cause of action is thus stated, and the demurrer is overruled.