SAMUEL FRIEDMAN, DEFENDANT IN ERROR, v. SNARE & TRIEST COMPANY, PLAINTIFF IN ERROR.

Argued November 21, 1904—Decided June 19, 1905.

1. In the absence of anything to show the contrary, the title and legal possession of the owner or occupant of lands abutting upon a street presumably extend to the middle of the street.

2. Landowners have the right to deposit in the street building materials required for the improvement of the abutting property; the right is to be reasonably exercised in view of the rights of the public, and is subject to regulation in the public interest.

3. Where an abutting landowner, or his agent standing in his rights, stores building materials in the street, he is not under ordinary circumstances charged with a duty to render the materials safe for persons who attempt to use them for their own purposes, whether of pleasure, convenience or profit.

4. There is nothing in the mere existence of building materials as an obstruction in the street that denotes an invitation to the passer-by, or to the idler or playful child, to use the materials for his own purposes.

5. The fact that building materials lying in the street may be so arranged as to be attractive to children as a place for play, or as a resting place during or after play, does not impose upon the landowner or his agent a duty to so arrange and maintain the materials as to render them safe for such uses. In such cases attraction or temptation is not legally equivalent to invitation.

On error to the Supreme Court.

For the plaintiff in error, *Cowles & Carey* and *Hector M. Hitchings* (of the New York bar).

For the defendant in error, *Collins & Corbin.*

The opinion of the court was delivered by

PITNEY, J.    The defendant in error, who was plaintiff below, recovered a verdict and judgment for the damages that accrued to him through personal injuries sustained by his daughter, Fannie Friedman, a child between four and five years of age, by reason, as alleged, of the negligence of the defendant. Reversal is prayed because of alleged trial errors, evidenced by bills of exception.

The declaration sets up that a firm of Colgate & Company were proprietors and operators of a building and premises situate on the south side of York street, in Jersey City, used and operated as a manufactory for soaps and perfumes; that the defendant, Snare & Triest Company, was constructing an addition to the building, and was engaged in making certain repairs to the same under contract with Colgate & Company; that the defendant improperly placed and piled upon the sidewalk of the street adjacent to the building sundry iron girders, each twenty-two feet in length, fifteen inches in height and four inches in width, and each weighing about one thousand pounds, in such manner that the girders were piled, insecurely, one above the other, and so that one of the girders rested in an insecure position and was liable to fall suddenly and without warning and injure persons walking upon the street; that the defendant permitted the girders to remain in this insecure and dangerous position without notice or warning to travelers, and that the insecure girder fell suddenly and without warning upon Fannie Friedman, while she was traveling, walking and passing upon the sidewalk adjacent to the building, and without negligence on her part, and thereby crushed her foot, &c. Upon the trial it was shown that the child was injured through the fall of one of

twelve girders, of the character described in the declaration, that had been piled upon the sidewalk in front of Colgate & Company's premises, and had been permitted to remain there between two and four weeks, awaiting use in certain repair work that was in progress upon the factory. It was in controversy whether the jury could reasonably find from the evidence that the Snare & Triest Company was responsible for placing the girders there, or for their care while remaining in that position, or that there was any want of care about placing or maintaining them. For the sake of simplicity, we will assume that the legal questions thus raised were properly disposed of by the learned trial justice. It was indisputable, however, that the girders were required as building materials for the repair of the Colgate factory; that the defendant, if connected with the transaction at all, had delivered the girders, under employment by Colgate & Company, and placed them longitudinally upon the sidewalk, piled one upon another, immediately adjacent to the front of the building, which abutted upon the side of the street. While numerous witnesses gave variant accounts of the way in which the Friedman child received her injury, it appears, from all accounts, that she was one of several small children who either were at the moment, or immediately before had been, playing upon the pile of girders. The evidence in no aspect sustained the averment of the declaration that at the time of her injury Fannie was walking and passing along the sidewalk as a traveler. She was either playing with the other children upon the girders or was at the moment seated upon a girder resting from her play. For this reason, at the close of the plaintiff's case, an offer was made to amend the declaration to conform to the facts in this respect, and while no amendment was actually made, the pleadings were treated, for the purposes of the trial, as if amended.

Under this state of the pleadings and proofs, therefore, we assume that the jury might reasonably find that if any legal duty was owing to the injured child, or to the plaintiff as her parent, with respect to the condition of the pile of girders, it was owing by this defendant, and that if this duty included

the exercise of care that the girders should be so placed and maintained as not to cause injury to children playing upon them, or resting upon them during play, it might be found that the duty had been neglected. At the same time the question of defendant's responsibility must be viewed in the light of the uncontroverted fact that whatever it had done about placing and keeping the girders there, had been done under employment of Colgate & Company, for the purpose of repairs upon their building, and done in their right as owners and occupants of the land.

Motions for nonsuit and for direction of a verdict in defendant's favor were overruled, and the case was submitted to the jury with instructions from the trial justice to the effect that the defendant company had the right to put the girders in the street, provided they were put there in a safe condition; that while they remained there the duty rested upon the defendant of exercising reasonable care to see that they were kept in a safe condition; that the propensity of little children to play upon the street and to rest from their play in the street, was to be taken into consideration; that if through defendant's want of care the girders were left in the street in such condition that they would tempt little children to make use of them, either for play or for resting, and would be dangerous to the children thus using them, a case of actionable negligence was made out; and that the fact that Fannie Friedman was playing upon the girders, in view of her tender years, would not bar her right to recovery. Numerous exceptions challenged the propriety of these instructions, and of other rulings and instructions that were based upon the same theory.

There was nothing in the case to exclude the inference that the title and possession of Messrs. Colgate & Company extended to the middle of the street. In our courts it has long been established that, in the absence of anything to show the contrary, the title and legal possession of the abutting owner or occupant do extend to the middle of the road or street; the freehold remaining in him, subject only to the easement or right of passage in the public. So it was laid

down in our Supreme Court more than a half century ago in *Winter* v. *Peterson,* 4 *Zab.* 524, 527. The same rule was recognized ten years later by Chancellor Green in *Hinchman* v. *Paterson Railroad Co.,* 2 *C. E. Gr.* 75, 82, where he said: "The presumption of law is that the owners of the land on each side of the street own to the middle of the street, and have the exclusive right to the soil, subject to the right of way. It is objected by the defendant's answer that the complainant's titles do not extend to the middle of the street, because the lands as described are bounded by the sides of the streets. But the established inference of law is that a conveyance of land bounded on the public highway carries with it the fee to the centre of the road as part and parcel of the land." This statement of the rule was referred to by Chief Justice Beasley, in delivering the opinion of this court, in *Salter* v. *Jonas,* 10 *Vroom* 469, 472, and the rule was made the basis of deciding that in a conveyance of lands with abuttals coinciding with the side of a street or highway, nothing short of express words of exclusion will prevent the title from extending to the middle of the street, if the grantor, at the date of such conveyance, is the owner of the street to that extent. In *Weller* v. *McCormick,* 23 *Id.* 470, 473, it was held by the Supreme Court that where one is in actual occupation as owner of the premises abutting upon the street, his title and possession presumably extend to the middle of the street, subject only to the public rights. The same doctrine is recognized in *Hoboken Land and Improvement Co.* v. *Kerrigan,* 2 *Id.* 13; *State, Benson, pros.,* v. *Mayor, &c., of Hoboken,* 4 *Id.* 280, 281; *Green* v. *Trenton,* 25 *Id.* 92, 102; *Ocean Grove* v. *Berthall,* 33 *Id.* 88, and *Ocean City Association* v. *Shriver,* 35 *Id.* 550. The substantial character of the rights of the abutting owner in the soil of the street is recognized in all our decisions that touch upon the subject. Besides the cases already noted, the following may be referred to: *Wright* v. *Carter,* 3 *Dutcher* 76 (reversed, see 5 *Vroom* 207; 27 *Id.* 288); *Wuesthoff* v. *Seymour,* 7 *C. E. Gr.* 66, 70; *Avis* v. *Vineland,* 27 *Vroom* 474, 477; *French* v. *Robb,* 38 *Id.* 260.

It is the undoubted right of landowners to deposit in the street building materials required in the improvement of their abutting property, although the public lawfully using the street may be, as in many cases they necessarily are, to some extent, incommoded thereby. 27 *Am. & Eng. Encycl. L.* (2d ed.) 156, *tit., "Roads and Streets."* Of course, the right is to be reasonably exercised, in view of the rights of the public, and is subject to regulation in the public interest. Where the ownership of the soil of the street is not in the abutting owner, his right to use the street for this and other like purposes is vindicated on the ground of necessity, as in *O'Linda* v. *Lothrop,* 21 *Pick.* 292, 297; 32 *Am. Dec.* 261. While not questioning that necessity would furnish a sufficient justification in the present case, yet since it appears that Messrs. Colgate presumably held the legal possession of the soil of the street, the right of the defendant, as their contractor, to store building materials there, may be simply and directly referred to the landowner's right to use the soil for all proper purposes, provided he avoid unreasonable interference with the public easement.

It is manifest that every deposit of building materials of the character now in question necessarily amounts to a temporary exclusion of the public from the space thus occupied. A reasonable interference with the public easement is rightful. If the public be unreasonably hindered or endangered, the party at fault may be indicted for maintaining a public nuisance, or may be required to remove the obstruction. And further, an individual member of the public, if specially damnified by the nuisance while in the exercise of his rights in the street, may maintain a private action. But this refers only to parties injured while using the street as a street, and not to those whose injuries arise from their attempted use of the obstructing materials for their own purposes, whether of pleasure, convenience or profit. For the building materials themselves do not in any sense become public property by being allowed to remain in the street. And neither a traveler, nor an idler, nor even a playful child, can gain rights against the landowner, or against his agent who stands in his rights,

by using such building materials as a resting place or play-ground. In the absence of circumstances denoting invitation, one thus using the private property of another for his own purposes may be either a licensee or a mere trespasser, depending upon circumstances. In neither case is there any duty incumbent upon the proprietor to make his property safe for such use. Aside from the notion that temptation is equivalent to invitation (with which we cannot concur), there is nothing in the mere existence of building materials as an obstruction in the street that denotes an invitation to the passer-by or to the idler or playful child to use the materials for his own purposes. The doctrine of invitation relates to the entry upon or user of lands. The very fact that materials piled upon the ground constitute a hindrance to travel, negatives the idea of invitation in the ordinary sense.

The case for the plaintiff rests upon the theory that since these girders were so arranged as to be attractive to children, and since the injured child, with her companions, was using them as a place for play, or as a resting place during or after play, the proprietors of the premises, or the defendants, upon whom as independent contractors the matter had been de-volved, owed a duty to the children to so arrange the girders as to render them safe for their use. With this view we do not agree.

No doubt, where a duty exists to take care with respect to the safety of children of tender years, their very age must be taken into account, so that what might be reasonable care with respect to the safety of adults, who are capable, to some extent, of looking out for themselves, might not be reasonable care with respect to children. But in the present case the very question is whether any duty existed, and we are not able to see that the age of the child is pertinent upon this inquiry. That the party injured in this case was less than five years of age did not at all tend to give her any property interest or right of user in the defendant's girders. Whether she used them as licensee or as trespasser, in either case there was no duty upon the owner to exercise active care with respect to her safety.

The fact that a dangerous place or object is attractive to children of tender years is legitimately significant where the question of their own want of care is raised. But there are fundamental, and, as we think, insuperable, difficulties standing in the way of adopting the rule that the mere attractiveness of private property gives to the person attracted rights against the owner. One difficulty is that the rule, *pro tanto,* ignores the distinction between *meum* and *teum.* And on what principle is it to be limited to cases of trespass? Why does it not apply equally to the conversion of personal property, or even to larceny? If those who temporarily and for limited purposes convert the private property of their neighbors to their own use are to be not only excused but justified, where by reason of their tender years they were tempted to the trespass, and at the same time are to have rights of action against the true owners for the failure to exercise care about rendering the property suitable for their use, why may not those who under similar temptation convert the property of others wholly to their own use be likewise justified, and instead of a right of action gain a complete title to the property by simply appropriating it?

Another and a very practical difficulty that confronts the attempt to lay down any legal rule that depends for its limitations upon the attractiveness of objects to children of tender years, lies in the extreme improbability that any man, however prudent, will be able to foresee what may or may not be attractive to children. Certainly if a pile of steel girders, each weighing one thousand pounds, deposited in the street, as the girders in the present case were deposited, must be foreseen by a prudent man to be attractive to children, we are unable to say what object may not be thus attractive.

These are the views which we entertain after a careful consideration of the question at issue in this case, after most learned and able arguments by counsel on both sides, and a review of numerous reported decisions touching more or less closely upon the point.

Some reference to the English decisions will not be out of place.

A case much relied upon to sustain the present action is *Lynch* v. *Nurdin,* decided by the Court of Queen's Bench in the year 1841, and reported in 1 *Q. B., Ad. & E. (N. S.)* 29; 41 *Eng. Com. L.* 422; 10 *L. J., Q. B.* 73; 5 *Jur.* 797. There it appeared that defendant's servant, who was engaged in the delivery of goods sold by his master, had left a cart and horse standing in the street for a half-hour, drawn up by the side of the foot-way at the door of a house in which he was transacting his master's business. Plaintiff, a child between six and seven years of age, began with other children to play about the cart, and as he was in the act of climbing upon it, another child urged the horse forward, so that the plaintiff was thrown to the ground and injured. (The facts of the case appear more fully from the Jurist and Law Journal reports than from that of Adolphus & Ellis.) The trial judge instructed the jury that if, in their opinion, the negligence of the defendant's servant had caused the injury, they should find for the plaintiff. There was a verdict for the plaintiff accordingly. A rule *nisi* was then obtained for a new trial, because of misdirection, and because the verdict was against the evidence. So far as the report of the case shows, however, the latter ground was not relied upon, and the motion for new trial was rested solely on the ground that the plaintiff's injury arose in part from his own fault and in part from the fault of his playmate. Curiously enough, the existence of a duty to the playing children, whose breach would constitute actionable negligence, was not made the subject of argument. It appears clearly that no question was raised before the court upon this point. Defendant's negligence having been conceded by counsel, the remarks of Chief Justice Lord Denman are hardly to be treated as a considered judgment upon that question. The only controverted point that seems to have been determined was that although the plaintiff's own act co-operated to produce his injury, he was not for that reason debarred from recovering compensation in respect of defendant's negligence, and this because of the plaintiff's tender years. So far as defendant's liability was concerned, the case seems to have been rested upon the authority of *Dixon* v. *Bell,*

5 *Mau. & Sel.* 198; 19 *Eng. Rul. Cas.* 26; *Daniels* v. *Potter*, 4 *Car. & P.* 263, and *Illedge* v. *Goodwin*, 5 *Id.* 190.

In *Dixon* v. *Bell* (1816), 5 *Mau. & Sel.* 198; 19 *Eng. Rul. Cas.* 26, the defendant entrusted a young mulatto girl, his servant, aged about fourteen, with the care of a loaded gun, having first caused the priming to be removed. The servant aimed the gun, in play, at the plaintiff's son, a child between eight and nine, saying she would shoot him, and thereupon pulled the trigger. The gun went off and destroyed the eye of the child. A verdict having been rendered in favor of the plaintiff, there was a motion for a new trial on the ground that the defendant had used every reasonable precaution. The motion was denied on the ground that it was encumbent upon him who, by loading the gun, had made it capable of doing mischief, to render it safe by withdrawing the load. ·

*Daniels* v. *Potter* (1830), 4 *Car. & P.* 263, was an action against a tradesman who had a cellar opening upon the public street, and the rule was laid down that he was bound to take reasonable care that the cover of the opening was so placed and secured that under ordinary circumstances it would not fall down. But the plaintiff was a passer-by, who was injured by the fall of the cover through its being insecure, as alleged, by reason of the defendant's want of care.

*Illedge* v. *Goodwin* (1831), 5 *Car. & P.* 190. This is a meager report of the trial of a case in which it appeared that a scavenger cart, owned by the defendant, was backed up against the window of plaintiff's shop, breaking a quantity of china, and that the cartman was not present at the time. Defendant called two witnesses who swore to the striking of the horse by a person passing by, and one of them said that the horse backed against the window in consequence of the bad management of the plaintiff's shopman, who came out and laid hold of his head. During the cross-examination of the second of these witnesses, the jury interposed and said they did not believe the evidence of either of them. From this it is inferable that the verdict for the plaintiff was based upon the ground that the horse, of its own motion, had backed the cart into the window, an act of trespass for which the

owner of the cart was held responsible. Chief Justice Tindal, commenting upon the evidence of the witnesses who were disbelieved by the jury, said that, supposing them to be speaking the truth, it would not amount to a defence, since if a man chooses to leave a cart standing in the street he must take the risk of any mischief that may be done.

Dixon *v.* Bell, Daniels *v.* Potter and Illedge *v.* Goodwin do not seem to us to furnish adequate authority for attributing actionable negligence to the defendant in Lynch *v.* Nurdin. That the Court of Queen's Bench would have concluded there was such negligence, or any legal duty existing under the circumstances of that case, if these questions had been seriously discussed by defendant's counsel, is not to be taken for granted.

The authority of the latter case was doubted by Chief Baron Pollock, in *Lygo* v. *Newbold* (1854), 9 *Exch.* 302. In this case the plaintiff was riding in defendant's cart, by permission of the servant in charge, but without authority of the defendant. The cart, having broken down and injured the plaintiff, the question was whether defendant was liable for these injuries. Recovery having been denied by the trial judge, the court refused to disturb the verdict. In *Singleton* v. *Eastern Counties Railway Co.* (1859), 7 *C. B.* (*N. S.*) 287, the plaintiff, an infant three and a half years of age, strayed upon the railway track and had its leg cut off by a passing train. It was held that in the absence of any evidence to show the child got there through some neglect or default on the part of the company, they were not responsible for the injury. Lynch *v.* Nurdin was cited by counsel, but was not considered by the court as sufficient support for the plaintiff's action.

In *Hughes* v. *Macfie* and *Abbott* v. *Macfie* (1863), 2 *Hurlst. & C.* 744; 33 *L. J. Exch.* 177, defendants were occupants of a warehouse adjoining the street, with a cellar opening in the street, protected by a wooden lid. Their workmen, in order to lower casks into the cellar, had raised the lid and rested it against the wall, nearly upright. One of the plaintiffs, a child of seven years of age, was playing in the street with

other children, when the other plaintiff, a child of five, climbed upon the lid, and in jumping down pulled it over, to the injury of the two plaintiffs. The court denied the right of recovery to the child who had caused the lid to fall, Chief Baron Pollock saying: "We think the fact of the plaintiff being of tender years makes no difference. His touching the flap was for no lawful purpose, and if he could maintain the action he could equally do so if the flap had been placed inside defendant's premises, out of sight and reach of the child. As far as the child's act is concerned, he had no more right to touch this flap for the purpose for which he did touch it than he would have had if it had been inside the defendant's premises. Cases were referred to, supposed to be in favor of the plaintiff. We think none are decisive of this case, and no case establishes a principle opposed to our view, which is that the nonsuit was right." As to the other action, in which Abbott was plaintiff, it was held that if he was playing with Hughes, so as to be a joint actor with him, he could not maintain his action; but if not, he could, as his injuries would then be the result of the joint negligence of Hughes and the defendant. In the argument, Lynch v. Nurdin was cited as express authority that in the case of an infant of tender years the circumstance that he was a trespasser and contributed to the mischief by his own act will not necessarily preclude the maintenance of the action, and it was attempted to be shown that the authority of that case stood unimpeached by later decisions. Chief Baron Pollock made no more specific reference to Lynch v. Nurdin than is above quoted, but the present decision was manifestly inconsistent therewith.

And in *Mangan* v. *Atterton* (1866), *L. R.*, 1 *Exch.* 161; 4 *Hurlst. & C.* 388; 35 *L. J. Exch.* 161, where defendant exposed in a public place for sale, unfenced and without superintendence, a machine which might be set in motion by any passer-by, and which was dangerous when in motion, and the plaintiff, a boy four years old, by the direction of his brother, seven years old, placed his fingers within the machine whilst another boy was turning the handle, which moved it, and

the plaintiff's fingers were crushed, it was held there was no ground of action.

In *Clark* v. *Chambers* (1878), *L. R.*, 3 *Q. B. D.* 327; 47 *L. J., Q. B.* 427; 19 *Eng. Rul. Cas.* 28, defendant had unlawfully placed a barrier, armed with spikes, across a road, and some person other than he (presumably a person entitled to use the road, and to whom the barrier was a hindrance), had removed it from the position in which defendant left it, and placed it in an upright position across the footpath. Plaintiff, passing that way, in the dark, and ignorant of the obstruction, collided with it and sustained a severe injury. His action was sustained. In the judgment of Chief Justice Lord Cockburn there is a review of Dixon *v.* Bell, Illedge *v.* Goodwin, Lynch *v.* Nurdin, Daniels *v.* Potter, Hughes *v.* Macfie, Abbott *v.* Macfie and Mangan *v.* Atterton, but the sole point in controversy was whether defendant's act was the proximate cause of plaintiff's injury, and the affirmative decision was rested on the principle of *Scott* v. *Shepherd, 3 Wils.* 403; 2 *W. Black.* 892; *Sm. Lead. Cas.* Plaintiff, it will be observed, was lawfully using the way for purposes of passage, so that there was no question of his being within the class of persons for whose safety the defendant was bound to be careful. The distinction between such a case and one when the injured party is making use of defendant's private property for his own purposes, is entirely clear.

It is safe to say, therefore, that so far as Lynch *v.* Nurdin is relied upon in support of the present action, it has been distinctly discountenanced, if not necessarily overruled by the later English decisions. It is true it was relied upon by our Supreme Court in *Danbeck* v. *New Jersey Traction Co., 28 Vroom* 463. But that was the case of a child injured while riding as a gratuitous passenger upon a railway car, having entered it upon the invitation of the conductor, and furnishes no support for the present action.

We deem it unnecessary to rehearse at length the decisions cited by counsel for the plaintiff from the courts of some of our sister states, affirming, as is claimed, the general principle upon which the present plaintiff's right of action is based.

Many, if not most of those decisions depend, fundamentally, upon the same notion that in many states, and in the Supreme Court of the United States, has been given effect in the so-called "turntable cases," which will be found collated in 29 Am. & Eng. Encycl. L. (2d ed.) 32. That is, that a land-owner, who maintains upon his own premises, for his own purposes, that which is alluring or tempting to little children, is held to a duty of exercising care with respect to their safety, in anticipation of the probability that they may be tempted to make use of his property for purposes of play. This doctrine has been repudiated in this state by the cases of *Turess* v. *New York, Susquehanna and Western Railroad Co.*, 32 *Vroom* 314, decided by the Supreme Court, and *Delaware, Lackawanna and Western Railroad Co.* v. *Reich, Id.* 635, decided by this court. The rule laid down in these cases is, as we think, wholly inconsistent with the asserted liability of the present defendant. That rule draws a clear distinction between temptation and invitation, and is to the effect that those who enter upon private property for their own purposes without invitation, but as trespassers or licensees, do so at their own peril, so far as any right on their part to call for active care on the part of the property owner for their welfare is concerned, and that although the injured party be an infant of tender years, and for that reason less able to care for its own safety, and more susceptible to the attractions that private property affords for purposes of play, this circumstance does not create a duty where none otherwise would exist. It is true that in our turntable cases the attractive objects were not within the limits of the public highway, but it is likewise true that in the present case, as already pointed out, while the building materials were within the street, they were deposited there, as private property, for lawful purposes by the defendant, in the exercise of the land-owner's rights in that behalf. And although the representatives of the public might complain of the occupancy of a portion of the street by building materials if unreasonably prolonged, or if the materials were insecurely placed, and although anyone lawfully using the street as such might have

an action if specially injured by collision with the materials, or by their fall, if they were negligently left in an insecure position, we cannot see that these circumstances confer rights upon one who is using the building materials, as the injured child in the present case was doing.

We hold, therefore, that the rulings and instructions of the learned trial justice above referred to were erroneous. The judgment under review should be reversed, and a *venire de novo* awarded.

GARRISON, J. (concurring). From the testimony the jury could find that the plaintiff's infant daughter was sitting on one end of one of the girders and aiding in imparting to it the movement that is described as "teeter-tawter," and that the movement so imparted caused the fall of the girder, by which the infant was injured.

The jury was instructed that "the inquiry must be, were these girders, at the time of the accident, in such condition that they would tempt little children to use them for play * * * and if they did so use them, would endanger them? If they did so tempt and endanger the children, then they were not proper to be left in the condition they were on the street."

I think that this instruction, under which there could be a recovery for injuries from the fall of a girder, resulting from a motion imparted to it by the infant, under the circumstances above detailed, was erroneous, and for this reason vote to reverse the judgment of the Supreme Court.

This conclusion does not in anywise rest upon the negligence of the infant, or upon her assumption of obvious danger, or upon the idea that she was a trespasser, or that she had no right to play while upon the highway; nor does it derive any support from the notion that the owner of the fee in a street may, by depositing building material thereon, invoke the doctrine of trespass as to persons using such part of the street without injury to the property so deposited.

My concurrence in the result reached by this court rests solely upon the consideration that the accident the jury may

have found in the present case involves no negligence on the part of the defendant, whose duty, under its qualified right to deposit its girders in the street, was to see that they did not render the street less safe, not that they should prove innocuous as playthings.

Fort, J. (dissenting). I am unable to agree with the result reached by the majority of the court in this case.

It may be conceded that the abutting owner, whose land abuts upon a public highway, if no other fact appears, owns to the middle of the street. But such ownership is, of course, subject to public user, and the public rights are, as I think, exclusive of any right of the abutting owner in the highway which is inconsistent with the public right. All parts of the street, from side to side and end to end, are for the public use in appropriate and proper methods, and not for permanent private use. A temporary use may, of course, often be made of the street, although it is not of a public nature, as for loading, unloading goods, and the like. *Ell. Roads & Sts.* 17, 18; *People* v. *Cunningham,* 1 *Den.* 524; 43 *Am. Dec.* 709, *note; Callanan* v. *Gilman,* 107 *N. Y.* 360 (*Justice Earl*); *note to* 1 *Am. St. Rep.* 840–844; *North Manheim Township* v. *Arnold,* 119 *Pa. St.* 380; 4 *Am. St. Rep.* 650, 653, *note.*

An abutting owner has no right to put upon the street, except for temporary purposes, any article, dangerous, or which may become dangerous, to an adult or child using the street, in any way that the person placing it there should reasonably anticipate such adult or child would use it. This includes, as I think, a child at play.

In the case before us the child who was injured was but five years of age, and hence was not chargeable with contributory negligence. The defendant had stored, as I think, upon the street a lot of iron girders. They had been there for upwards of three weeks. The injured child was resting upon the girders when one of them fell, and the injuries sued for were the result.

At the trial, Mr. Justice Dixon stated in his charge what I think is the true rule in the given conditions. He said:

"As I have said, if a person places his goods upon the street in a proper condition, and exercises reasonable care to see that they are kept in that or some other proper condition, he is not blamable. But if he has not exercised reasonable care, if he has not had some supervision over them and they have got out of condition, and been out of condition sufficiently long that he would have been apprised of their improper condition if he had exercised reasonable care, then he is blamable. So you see it is not only a question of their condition at the moment of the accident, but of their condition for some time previous."

Then, after quoting from the testimony, he proceeds as follows:

"You see, the inquiry now is whether the person chargeable with the supervision of those girders exercised reasonable care and supervision over them. If he did, and that condition which was dangerous occurred, say, ten minutes before the accident, that person would not be responsible; but if the dangerous condition extended back for several days or weeks before the accident, then the question comes to you, did the person in charge exercise reasonable care and supervision, and would he have discovered the dangerous condition with such care and supervision? The plaintiff claims that such care and supervision were not exercised. The plaintiff must make that out to your satisfaction, and, if she does so by a preponderance of the evidence, she has made out another element of her case."

This statement left it to the jury, as I read it, to determine whether or not the defendant, in leaving the girders upon the street for a long period of time (which he did, storing them there, in fact), had been negligent in the care of them while thus left, and whether that neglect had resulted in the injury to the child.

Unless it can be said that a child of tender years has no right upon the public highway for any other purpose than the mere passage and repassage thereon, and that such a child is a wrong-doer if he stop to rest upon girders left upon the highway, as in the case before us, then I am unable to see

why it was not a question for the jury whether the-plaintiff was or was not entitled to recover.

An examination of the authorities, both in this country and in England, as it seems to me, clearly sustains the right of action in the plaintiff in this case.

In order to sustain this action it has been found necessary to attempt to overthrow the case of Lynch v. Nurdin, decided by the Court of Queen's Bench, in 1841, and cited in the majority opinion. This case has never been repudiated by any court in this state, nor do I think it has been even inferentially, by any court in England.

It is unnecessary to review the cases in England, which are in principle similar to Lynch v. Nurdin, further than has been done by Mr. Justice Pitney in his opinion in this case; but I am convinced that a careful review of the cases which he cites as sustaining the contention that Lynch v. Nurdin has been distinguished, if not overthrown by the English courts, will show no such result, but that Lynch v. Nurdin is still recognized by all the text-writers, and is not inconsistent with the decision in any of the cases cited from the English courts.

I think the true rule in this class of case is this, the line of liability lies in the affirmative or negative answer to this question: "Was the thing which did the injury, at the time it did it, rightfully or wrongfully upon the highway?" If rightfully, then, if there for a temporary purpose, no liability. But if there, stored for a time, and hence wrongfully there, then liability if injury result from a negligent act of the owner; and, in such case, any act resulting in injury, which the owner should have reasonably anticipated would happen, and which has happened, may constitute negligence. *McDonald* v. *Snelling,* 14 *Allen* 290, 295; *Dixon* v. *Bell,* 14 *Mau. & Sel.* 198; *Wright* v. *M. & M. R. R. Co.,* 4 *Allen* 283.

For cases in point, decided in other states, the following references are made: *Knuz's Admrs.* v. *City of Troy,* 104 *N. Y.* 344; *Donohoe* v. *Vulcan Iron Works,* 7 *Mo. App.* 447; *Chicago* v. *Keefe, Admr.,* 114 *Ill.* 222; *McGarry* v. *Loomis,*

63 *N. Y.* 108; *District of Columbia* v. *Boswell,* 6 *App. Cas.* 420; *Gibson* v. *Huntington,* 38 *W. Va.* 117; *Straub* v. *City of St. Louis,* 14 *Am. Neg. Rep.* 384.

If I were unwilling to enforce the rule which I have stated, as between an adult and an abutting proprietor, storing articles upon the sidewalk or street, I should still feel clear, in the case of a *non sui juris* child, that the rule stated by the trial justice in this case was applicable.

Chief Justice Beasley, in *Danbeck* v. *New Jersey Traction Co.,* 28 *Vroom* 463, when he stated:

"Very few of the rules that regulate the conduct of a man with his fellow can be applied with the less show of reason to his intercourse with children. It is the legal duty of everyone dealing with a child to protect it against its own indiscretion."

And in this opinion the distinguished Chief Justice quotes *Lynch* v. *Nurdin* with approval.

I think that an abutting owner, placing materials upon the public highway, in front of his premises, is bound to anticipate the possible use which a child may make of them, in its innocency, and in accordance with the instincts and impulses naturally incident to child life, and that a duty is cast upon such abutting owner to exercise reasonable care and caution with respect to the probable conduct of such a *non sui juris* person. *Powers* v. *Harlow,* 19 *N. W. Rep.* 257 (*Chief Justice Cooley*); *Rackmel* v. *Clark,* 54 *Atl. Rep.* 1027.

This rule is not in conflict with the rule declared in the turntable cases. *Delaware. Lackawanna and Western Railroad Co.* v. *Reich,* 32 *Vroom* 635. The conclusion in those cases, as I understand them, is expressly upon the ground that the turntables were upon private property, and that the plaintiff was a trespasser when injured.

I am unable to conceive how a child, resting upon the public highway, as the plaintiff was in this case, or even if in play, can in any sense be deemed a trespasser. The child, I think, was where the defendant should have reasonably anticipated that she might come.

Judge Bogert requests me to say that he concurs in this dissent.

*For affirmance*—FORT, BOGERT.    2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, GARRETSON, PITNEY, SWAYZE, VREDENBURGH, VROOM, GREEN, GRAY.    10.