ARCHIE F. HEYER, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF CLARENCE B. HEYER, DECEASED, RESPONDENT, v. JERSEY CENTRAL POWER AND LIGHT COMPANY, APPELLANT.

Submitted May 31, 1929—Decided October 14, 1929.

For the appellant, *Collins & Corbin* (*Edward A. Markley* and *Charles W. Broadhurst*).

For the respondent, *Ward Kremer*.

The opinion of the court was delivered by

BODINE, J. The defendant appeals from the judgment in favor of the plaintiff. Plaintiff's intestate was a mason, twenty-two years of age at the time of his death. He was working on the roof of a building on the north side of Monmouth street, Red Bank. The building was of re-enforced concrete construction. The defendant had moved its wires before the construction commenced and was informed of the size of the proposed building and had an opportunity to safely place the wires. On the roof there was a fire wall about two and one-half feet high. Decedent, with another workman, was rigging a derrick to hoist plaster from the street to the roof. The rigging consisted of attaching to a beam about fifteen feet long and extending out from the fire wall about two feet, a hook by means of a wire so that a pulley could be fastened to the hook.

Above the fire wall and parallel with it were three high tension wires, property of the defendant. These wires were supported by poles in the street and carried thirty-three thousand volts. The nearest wire to the building was a little more than five and one-half feet above the fire wall and about five feet from the side of the building.

While the decedent was leaning out over the fire wall, attaching the hook to the beam by means of the wire, there was a sudden report like a gun —the high-tension wires, or at least one of them, blazed and smoked. The decedent fell

back and his clothes around his shoulders were observed to be on fire. He died as a result of the occurrence.

"It is clear that the inference that plaintiff's intestate was killed by a current of electricity transmitted by the defendant company through the wire in question * * * would not establish defendant's liability to answer in damages for the death. It must further appear that in transmitting the current through the wire in the condition it then was, the defendant company was negligent in some duty which it owed to the deceased." *Brooks* v. *Consolidated Gas Co.*, 70 *N. J. L.* 211, 213.

The plaintiff below called as a witness, Smith, an electrician, who had studied the theory and practice of electrical lines and who had worked as a lineman for the last seven or eight years. This witness described the defendant's wires. They were of bare copper wire fastened by porcelain pole petticoat insulators on wooden cross-arms to wooden poles. Insulation of the wires themselves is not usual. The trial judge struck the testimony of this witness as to standard practice by electrical companies in running similar wires in similar places.

"The degree of care which * * * is required * * * is that which is exhibited by persons of ordinary prudence under like circumstances, and, so, the adoption of a method of * * * construction which accords with that in general use by well regulated * * * companies, and which is approved by experience, is a due performance of the duty which it owes." *Feil* v. *West Jersey and Seashore Railroad Co.*, 77 *N. J. L.* 502, 503. See, also, *Kingsley* v. *Delaware, Lackawanna and Western Railroad*, 81 *Id.* 536; *Zebrowski* v. *Warner Sugar Refining Co.*, 83 *Id.* 558.

The ruling of the trial judge was one of which the defendant cannot now complain, since it was made at its instance. The trial judge did, however, say that he would permit Smith's testimony to stand in so far as it related to the care and caution proper in transmitting electrical currents of high voltage by means of wires in proximity to a building under construction similar to the one where this accident occurred.

It is urged that the witness was giving his opinion as to negligence. The fact appears otherwise. He did testify that he had seen currents of similar voltage jump three to four feet, and that on damp days they would probably go further. He was stating facts peculiarly within his knowledge which were pertinent to the issue. Whether the current would only jump three or four feet or more seems immaterial. The jury might well find that high-tension wires about five feet out from and above a building under construction capable of jumping in an arc three or four feet long were too close.

"Now, the elemental rule is that whoever uses a highly-destructive agency is held to a correspondingly high degree of care. Care in this sense means more than mere mechanical skill, it includes circumspection and foresight with regard to reasonably probable contingencies." *Anderson* v. *Jersey City Electric Light Co.*, 63 *N. J. L.* 387, 390.

There was no prejudicial error either in the court's ruling or in submitting the case to the jury, and the judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 16.

*For reversal*—None.