### McGILL et al. v. UNITED STATES.
### Civ. A. 10904.

United States District Court
E. D. Pennsylvania.
July 15, 1952.

Joseph S. Lord, III, Philadelphia, Pa., for plaintiffs.

Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., Thomas J. Curtin, Asst. U. S. Atty., Phildelphia, Pa., for defendant.

CLARY, District Judge.

This is an action against the United States to recover damages for personal injuries. Robert McGill, a minor, on the 30th day of August, 1949, fell from the walkway of a Coast Guard tower, located adjacent to the boardwalk in the Borough of Avalon, State of New Jersey. The land upon which the tower was erected was owned by the Borough of Avalon which granted permission to the United States Coast Guard to build the tower. The tower was easily accessible by means of a walkway leading directly from the boardwalk. The walkway led to a set of steps going up the inside of the tower to a lookout house on the top. Around the lookout house was a catwalk, in one part of which was an opening leading to an auxiliary ladder or flight of steps. It was at this point that the minor plaintiff, then seven years old, fell.

In June of 1946 the Coast Guard stopped using the tower, it being deemed unnecessary to continue it in operation for Coast Guard purposes. At that time a chain was placed across the walkway entrance from the boardwalk and signs prohibiting trespassing were posted. Both chain and signs were stolen within a short time. Thereafter the only signs remaining were notices that the property belonged to the United States. From time to time, from 1946 to 1949, children used the lookout tower as a playground, climbing up and down the tower, and using the catwalk around the lookout house as an observation post. The evidence disclosed that this was an open and notorious use by children, particularly in the summer months. The evidence fails to disclose, however, that any actual notice was given to the Coast Guard of the use made of the tower by the children. The Coast Guard undertook to periodically inspect the tower to see that it was in good condition and repair but did nothing to secure the tower to prevent access to it by children. The use of the tower as a playground was so open and notorious that the United States Government should have had notice of the fact of its use in that respect.

On August 30th, 1949, Robert McGill, then seven years of age, accompanied by his brother, Stewart McGill, then ten years of age, and another youngster of like age, came down the boardwalk and approached the tower. At that time the boardwalk was in a state of disrepair in front of the entrance to the tower. The boardwalk itself had been barricaded by the Borough of Avalon on each side of the tower to prevent its use. Disregarding the barricades all three children climbed into the tower. They had started from the other end of the town and it was the first time that any of them had seen the lookout tower. They made an ascent and descent in safety but on the second trip to the catwalk, the younger boy, Robert McGill, fell as he attempted to get down through the manhole to the auxiliary ladder or steps. He struck three iron girders in his descent and was picked up at the foot of the tower on the beach and taken to Surf Hospital in Sea Isle City, New Jersey. It was four days before he fully regained consciousness. After nine days in the Surf Hospital, he was taken by ambulance to the Memorial Hospital in Philadelphia, Pennsylvania. He suffered a severe concussion of the brain, fracture of the skull on the right parietal area, laceration of the scalp, greenstick fracture of clavicle, fracture of the pelvic bone and fracture of the right femur. In the Surf Hospital a pin was put through his ankle and traction applied without appreciable results. At the Memorial Hos-

pital a bone operation was performed on the right femur, a plate inserted, and a body cast applied on September 12, 1949. On October 14, 1949, the cast was removed and x-rays made·at the time showed good position and alignment. ·He made normal progress in recuperation but has not and will not regain full normal function of the leg for a period of some five additional years. It is the expectation of the attending surgeon at the time that recovery should be complete. At the present time he is not able to engage in the full activities of a youngster of his age.

As a result of the accident, the parents incurred expenses of $329 at the Surf Hospital, $226.60 at the Memorial Hospital, and Dr. Lehman's surgeon fee $250, or a total of $805.60. The injuries sustained by the child were serious, painful, and the results have lasted for a period of approximately three years and will continue for an additional period of five years. The minor child sustained damages as a result of these injuries in the amount of $10,000.

The foregoing may be taken as my Findings of Fact in this case.

### Discussion.

■ ₁A review of the law of the State of New Jersey discloses that New Jersey has explicitly rejected the "attractive nuisance" doctrine. Delaware, L. & W. R. R. Co. v. Reich, 61 N.J.L. 635, 40 A. 682, 41 L.R.A. 831 (1898); Friedman v. Snare & Triest Co., 71 N.J.L. 605, 61 A. 401, 70 L. R.A. 147 (1905).

The case of Delaware, L. & W. R. Co. v. Reich, supra, involved an accident to a young child injured while upon a turntable of the railroad company. The turntable was located upon the private property of the railroad, near a public street, and was entirely unprotected and unguarded. Children of all ages frequently congregated upon the premises to play upon the turntable. The court held that under New Jersey law a landowner is under no obligation to ₁a mere licensee or to a trespasser to keep his premises in a safe condition; and the fact that the licensee or trespasser is an infant of tender years affords no reason for modifying this rule,

and charging the landowner with a duty which otherwise would not exist. The court further stated that a landowner erecting upon his premises, for beneficial use, a .structure which happens to be attractive to children, does not by such action extend an invitation to children to enter thereon.

The case of Friedman v. Snare & Triest Co., supra, involved an accident to a child of tender years, who was injured while playing upon building materials (iron girders) placed upon the street abutting the defendant's property. The girders were required as building material for the repair of the defendant's factory. The court there held that under New Jersey law even on the highway adjoining the landowner's property, the landowner is not charged with a duty to render the materials safe for persons who attempt to use them for their own purposes, whether of pleasure, convenience or profit. The court specifically pointed out that the theory of the plaintiff's case was that the girders were so arranged as to be attractive to children and that it was the duty of the defendant to so arrange the girders as to render them safe for children's use. The court held that whether the child used the girders as a licensee or a trespasser in either case there was no duty upon the owner to exercise active care with respect to her safety.

■ I have found no decided New Jersey cases which depart from the principles expressed in those two cases. On the other hand, the law of New Jersey has always held a landowner responsible for the negligent handling of ₁a dangerous instrumentality or agency which he brings upon his land. In the case of Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240, 19 A. 472 (1890), the court held the owner of a dangerous machine, in that instance, a steam boiler, liable for the immediate and obvious damage caused by the mismanagement of the instrumentality. The court there held that those having charge of instruments which, if mismanaged, are highly dangerous to the lives and persons of men who happen to be in their neighborhood, are liable for nonperformance of a

public duty to exercise great care and skill in the management of such dangerous instrumentalities.

In the case of Piraccini, Adm'r v. Director General of Railroads, 95 N.J.L. 114, 112 A. 311, 36 A.L.R. 294, the court held that a railroad was responsible for the death of a child as a result of a fire kindled by a railroad employe in a city near a path long frequented by the public and by school children and also near a playground. The purpose of the fire was to clear the land of dry leaves. A child, five years old, was soon after discovered on or near the property not far from the playground all in flames. As a result of burns the child died. The court held the defendant liable because of its responsibility for the use of a dangerous agency.

To like effect are the cases of New Jersey Fidelity and Plate Glass Insurance Co. v. Lehigh Valley R. R. Co., 92 N.J.L. 467, 105 A. 206, damage from explosives; Spenzierato v. Our Lady Monte Virgine Soc. etc., 112 N.J.L. 93, 169 A. 831, damage from fireworks; Anderson v. Jersey City Electric Light Co., 63 N.J.L. 387, 390, 43 A. 654; Heyer v. Jersey Central Power & Light Co., 106 N.J.L. 211, 147 A. 452; Adams v. Atlantic City Electric Co., 120 N.J.L. 357, 199 A. 27, 726, damage from electric power.

A late case of the Supreme Court of New Jersey decided March 3, 1952, Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 86 A.2d 777, held a defendant liable under the following circumstances: A janitor started a bonfire on the premises of the defendant and left it unattended. The premises were within the confines of a city and in an area known by the defendant to be used by children as a playground. A child wandering over the premises was burned as a result of the fire. The court held that the presence of the child upon the land should have been anticipated and from that derived the duty upon the defendant of care and protection against a dangerous instrumentality. The court there affirmed a finding in favor of the plaintiff citing the Piraccini case, supra. Counsel in this case contends, however, that from the general language of the opinion and the discussion by the court of the duties of a landowner, the Strang case is authority for the proposition that New Jersey has modified its previous rule holding a landowner free from liability for maintaining an "attractive nuisance". I do not agree. The decision of the court was based upon the presence of a "dangerous instrumentality" on the land and the negligence of the defendant in controling it.

■ The situation in this case shows no dangerous instrumentality. I doubt that a more perfect specimen of an "attractive nuisance" can be found than that exhibited by the facts of this case. Three children of tender years, who had never before been in the vicinity, discovered the tower. Although confronted with barricades marking off a clearly dangerous part of the boardwalk immediately in front of the entrance to the tower, they disregarded both the barricades and the dangerous condition of the boardwalk. Traversing the extremely dangerous area, as indicated by the photographs introduced in this case, they entered upon a solid, sound structure containing no defects and no hidden danger. They played upon it. As a result of a misstep by the minor plaintiff in attempting to place his foot upon the auxiliary ladder or steps, he fell some distance to the ground and sustained the serious injuries involved in this accident. Warning signs or even a chain at the base of the tower would have been as useless as were the barricades on the boardwalk. These barricades ordinarily should have kept both adults and children from the tower. There has been no attempt to prove in this case that the tower was a "dangerous instrumentality" in and of itself and I find as a fact that it was not. There is no charge of misfeasance. About the only basis of negligence alleged by the plaintiffs is that the defendant is guilty of nonfeasance in failing to make the tower "child-proof" in either removing a series of steps or by dismantling the tower.

It appears to me that the law of New Jersey draws a clear distinction between an "attractive nuisance" and the presence of a "dangerous instrumentality" upon the

land. This case clearly falls within the definition of an "attractive nuisance". The Strang decision is merely a reiteration of the doctrine long followed by the courts of New Jersey respecting dangerous instrumentalities and does not, in my opinion, extend liability under the law of New Jersey to a possessor of land for maintaining an "attractive nuisance".

I am, therefore, constrained to hold that under the law of New Jersey, plaintiffs have failed to establish negligence or a cause of action in this case.

#### Conclusions of Law.

1. This case is governed by the law of New Jersey.

2. The lookout tower was not an inherently dangerous instrumentality.

3. Defendant was not guilty of negligence.

4. Plaintiffs have established that the lookout tower constituted an "attractive nuisance" for which there would be no recovery under the laws of the State of New Jersey.

5. Judgment will be entered for the defendant.