HELEN M. BECK, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HARRY BECK, DECEASED, PLAINTIFF-RESPONDENT, v. MONMOUTH LUMBER COMPANY AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY, DEFENDANTS-APPELLANTS.

Argued October 24, 1947—Decided May 13, 1948.

For the plaintiff-respondent, *O'Brien, Brett & O'Brien* (*Thomas J. Brett,* of counsel).

For the defendant-appellant Monmouth Lumber Company, *George F. Lahey, Jr.*

For the defendant-appellant Public Service Electric and Gas Company, *Carl T. Freggens.*

The opinion of the court was delivered by

WACHENFELD, J. This action was instituted to recover damages for the death of Harry Beck, killed upon contact with electric wires of the Public Service Electric and Gas Company, hereinafter called "power company," while repairing a crane of the Monmouth Lumber Company, hereinafter called "lumber company." The appeal is taken by both defendants from a judgment of $35,000 entered against them.

The lumber company owns a tract of land 100 feet wide and 400 feet long in open country where it operates a hopper for the mixing of concrete. A mobile crane with a 65-foot boom was generally operated between the hopper and the railroad tracks on the right side of the property to unload freight cars but was also used to raise lumber and machinery. A long conveyor was constructed to the tracks to feed the hopper. A road enters the property from a nearby highway and runs between the other side of the hopper and the left property line. Two 35-foot poles carry telephone wires to the left side of the property and thence to a small shed next to the hopper.

In the latter part of October, 1945, the lumber company applied to the power company for power to operate two 220-volt electric motors and the power company erected one 45-foot

pole on the property, and using the two telephone poles, strung uninsulated wires carrying 4,150 volts, which voltage was to furnish current for the motors. The wires were strung approximately 29 feet to 33 feet above the ground, the lowest point being 26 feet at a sag between the last telephone pole and the pole erected by the power company on the property.

Before and during erection of the power lines the distribution inspector of the power company inspected the property several times to plan the installation, at which times the crane was on the property. The district superintendent of the power company inspected the property after installation and admittedly saw the crane.

Thereafter the lumber company contracted through its plant manager with Behrend to repair the crane's brake system on Saturday and Sunday, November 3d and 4th, 1945, on which days the lumber company did not operate. Behrend and Beck, experts on cranes, were partners in the business. To assist in the repairs the lumber company moved the crane to the road leading to the hopper, with the doom down about six feet from the ground and 20 feet to the nearest overhead wire.

After the repairs were completed Behrend, Beck and an assistant decided to test the crane by lifting a one-ton bucket attachment lying 25 feet away on the other side of the wires. There was testimony indicating they did not know that the wires were uninsulated and carried high voltage, and there is no dispute that they were not warned to this effect verbally or otherwise by any agent or representative of either of the defendant companies although some of them were fully cognizant of the actual situation that existed.

The repairmen talked over the necessity of "watching out for the wires" but this apparently had reference to their desire not to knock them down. The length of the boom made it impossible to maneuver it under the wires without striking either the pole or the conveyor and the crane could not be easily moved since the caterpillars were defective and additional motion might cause further damage. The crane was locked six feet above the wires and the slack of 20 to 25 feet of cable pulled to the ground. Beck and the assistant,

intending to attach the slack cable to the bucket, walked under the overhead wires, when they suddenly fell. The cable had come into contact with the overhead wires and Beck was instantly killed by the electric current.

Electrical experts testified open wire pole lines were widely used all over the country but admitted that where it was probable persons might come into contact with the wires they should be insulated or carried underground. The trial court allowed an expert witness for the respondent to testify that from good and safe engineering practice a dangerous situation is created where a crane with a boom rises ten feet above charged, uninsulated wires and that the hazard so created should be reduced by insulating the wires or eliminated by placing them underground.

Motions for nonsuit and directed verdict were made upon the ground that there was no proof of negligence on the part of either appellant; that their negligence, if any, was not the proximate cause of Beck's death; and that the evidence conclusively established contributory negligence and assumption of risk as a matter of law upon the decedent. The denial of these motions is the subject of this appeal.

The appellants also argue that the trial court erred in admitting respondent's expert testimony and also in several of its charges to the jury and in its refusing to adopt certain requests to charge.

Whenever error is alleged in refusal to nonsuit and to direct a verdict, both contentions may be resolved into a determination of the latter, because if evidence competent to take the case to the jury is received after refusal to nonsuit, any error in such refusal is cured. *Cappuccio* v. *Hammonton Electric Light Co.*, 98 *N. J. L.* 6; *Schreiber* v. *Public Service Coordinated Transport*, 112 *Id.* 199. Furthermore, in passing on both motions the trial court cannot weigh the evidence but must take as true all testimony which supports the view of the party against whom the motions are made. *Skiba* v. *Hmieleski*, 106 *Id.* 597.

The general rule has been stated that where an instrumentality employed for private benefit is a peril to others the proprietor thereof, while not an insurer against loss that

may accidentally occur, must exercise a high decree of care in its management or use. *VanWinkle* v. *American Steam Boiler Co.,* 52 *N. J. L.* 240. Similarly, whoever uses a highly destructive agency such as electricity is held to a correspondingly high degree of care toward all persons who in the exercise of their lawful right may come in contact with it. *Anderson* v. *Jersey City Electric Light Co.,* 63 *Id.* 387.

Although these cases vouch a high degree of care, the responsibility defined and actually imposed is the use of reasonable care consistent with the dangerous instrumentality employed and a proper anticipation of the results which could be reasonably foreseen. In *VanWinkle* v. *American Steam Boiler Co., supra,* it is stated that a person maintaining a dangerous instrumentality "is responsible only for negligence or want of skill in its management or use." In *Anderson* v. *Jersey City Electric Light Co., supra,* on demurrer to a declaration alleging negligence the court stated:

"The demurrer admits in effect that the defendant knew that the plaintiff would enter the shaft and work in the vicinity of its wires, and that it did not use reasonable care to render them safe in view of their location, whereby the plaintiff was injured.

"A good cause of action is thus stated, and the demurrer is overruled."

The Court of Errors and Appeals in *Adams* v. *Atlantic City Electric Co.,* 120 *N. J. L.* 357, 363, reiterates and confirms the doctrine of high degree of care and then states that the duty to be fulfilled means more than employment and use of approved mechanical appliances and includes circumspection and foresight with due regard to reasonably probable consequences:

"The principles of law applicable to these issues are well settled. Whoever uses, controls or manages a highly destructive agency (electric current) is held to a correspondingly high degree of care. *Anderson* v. *Jersey City Electric Light Co.,* 63 *N. J. L.* 387, 390; 43 *Atl. Rep.* 654; *Heyer* v. *Jersey Central Power, &c., Co.,* 106 *N. J. L.* 211, 214; 147 *Atl. Rep.* 452. And while the degree of care which is required is that which is exercised by persons of ordinary prudence under

same or like circumstances, and while the adoption and operation of a method which accords with that in general use by well regulated companies and approved by experience is a due performance of duty and care owed (*Heyer* v. *Jersey Central Power, &c., Co., supra* (at *p.* 213), and cases cited), the care to be exercised, the duty to be fulfilled, means more than the mere employment and use of approved mechanical appliances. Rather does it mean the exercise of that degree of care, of that manner of fulfillment of duty, which comprehends a circumspection, a foresight, a prevision which has due and proper regard to reasonably probable contingencies."

The test of liability is whether under the particular circumstances injury ought reasonably to have been anticipated. *Guinn* v. *Delaware and Atlantic Telephone Co.*, 72 *N. J. L.* 276; *Barnett* v. *Atlantic City Electric Co.*, 87 *Id.* 29; *McGinnis* v. *Delaware, Lackawanna and Western Railroad Co.*, 98 *Id.* 160. As was said in *Robbins* v. *Thies*, 117 *Id.* 389, 393:

"Now it is the duty of an electric company that maintains and controls wires charged with a deadly current of electricity in a place where it is likely that persons, known or unknown, will come in contact therewith, to use reasonable care to maintain proper insulation of such current, and this involves reasonable care in inspection for the discovery of possible impairment or defects. The test of liability to a particular person is whether injury to him ought reasonably to have been anticipated."

Liability herein is predicated on a breach of that duty. *Brooks* v. *Consolidated Gas Co.*, 70 *N. J. L.* 211; *Heyer* v. *Jersey Central Power and Light Co.*, 106 *Id.* 211.

The power company contends there is no evidence establishing any breach of such duty, relying principally on the ground that these wires were installed with standard equipment and maintained in accordance with standard practice.

As a general rule the adoption and operation of a method which accords with that in general use by well regulated companies and approved by experience is due performance of the duty and the care owed, *Heyer* v. *Jersey Central Power and Light Co., supra*, but the care which must be exercised

over the construction and maintenance of a highly destructive agency requires more than the use of mere mechanical skill and approved mechanical appliances; it also includes circumspection and foresight with regard to reasonably probable contingencies. *Adams* v. *Atlantic City Electric Co., supra.*

At the time the power company installed the highly charged wires on the lumber company's property the mobile crane was on the premises. Prior to the actual commencement of and during the installation a representative of the company inspected the premises several times but made no inquiries concerning the crane or its operation, despite its presence and his observation. Upon completion of the installation another representative of the company inspected the property and admits having seen the crane. Again no inquiries were made concerning the machine or its use although the narrow width of the property was obviously easily discernible. Admittedly no warnings of danger was given.

The crane, mobile in its nature, was used on the property for various purposes. Its presence and use were known to the power company representatives supervising and making the electrical installation. Its dangerous proximity to wires they knew to be uninsulated was apparent. One of the defendant's expert witnesses admitted the existence of uninsulated, highly charged wires created a hazard and were installed in this instance with no consideration to the use of the crane.

Whether under these circumstances the power company took proper precautions and fulfilled its duty of care is a question about which reasonable men might well differ and it therefore became an issue to be decided by the jury. *Brooks* v. *Consolidated Gas Co., supra; Barnett* v. *Atlantic City Electric Co., supra; Cappuccio* v. *Hammonton Electric Light Co., supra; McGinnis* v. *Delaware, Lackawanna and Western Railroad Co., supra; Walz* v. *Public Service Electric and Gas Co.,* 7 *N. J. Mis. R.* 993; *Heyer* v. *Jersey Central Power and Light Co., supra; Robbins* v. *Thies, supra.* Notwithstanding the employment of standard equipment and standard practices, the jury could reasonably find this defendant had failed to exercise the degree of care required under the circumstances. *Adams* v. *Atlantic City Electric Co., supra.*

*Malatesta* v. *Atlantic City and Shore Railroad Co.*, 88 *N. J. L.* 207, is cited as authority for a contrary result. That case is not applicable because there the dangerous wires were maintained upon the railroad's property by legislative authority, *McGinnis* v. *Delaware, Lackawanna and Western Railroad Co., supra,* and the high voltage and uninsulated wires were necessary for the operation of the railroad and were normally to be expected over the tracks.

The lumber company argues there is no proof that it breached any duty owed to the decedent or his co-workers.

As an independent contractor, decedent was on the premises by the implied invitation of the lumber company and the latter was bound to use reasonable care to see that the place in which the work was to be performed was reasonably safe. *Sommer* v. *Public Service Corp.,* 79 *N. J. L.* 349; *Kappertz* v. *McEwan & Son,* 106 *Id.* 484.

On the week-end during which the repair work was to be performed the lumber company's operations were stopped, and although the plant manager knew the electric wires were heavily charged and uninsulated, no mention of this fact was made to the independent contractor or his workmen; nor were they warned in any manner or apprised of the knowledge possessed by the company's representative. It was a question of fact to be decided by the jury whether the lumber company could reasonably have foreseen that the crane would have been used in testing the repairs made. This court cannot rule as a matter of law that the lumber company under all of these circumstances performed the duty owed to the decedent. *Kappertz* v. *McEwan & Son, supra.*

We then come to the question whether the decedent was contributorily negligent as a matter of law and whether such negligence was a proximate cause of death.

Upon completion of the repairs testing of the brake was advisable and use of the bucket for that purpose was reasonable. Behrend testified that he had no knowledge that the wires were uninsulated or dangerously charged; and while the decedent and his partner were accustomed to crane operations and repairs, there is no testimony attributing to them knowledge of the then existing danger. The swinging of the

crane within six feet of the wires and dropping a cable to retrieve the bucket under those circumstances cannot be determined as a matter of law to have constituted a failure to exercise due care. Working in close proximity to wires which are apparently safe, and without knowledge of the inherent facts which cause them to be otherwise, does not constitute negligence as a matter of law. *Sommer* v. *Public Service Corp., supra; McGinnis* v. *Delaware, Lackawanna and Western Railroad Co., supra.* Negligence and contributory negligence are pre-eminently questions of fact for a jury. In order to justify a nonsuit or directed verdict on the ground of contributory negligence, such negligence must not be in doubt. The proof of contributory negligence must be of a clear and convincing character before the issue can be taken from the jury, *Hyman* v. *Bierman,* 130 *N. J. L.* 170; and as was held in *Flanigan* v. *Madison Plaza Grill, Inc.,* 129 *Id.* 419, affirmed by this court in 130 *Id.* 532:

"Contributory negligence does not automatically arise because the accident might have been avoided. It depends on the circumstances and it usually is a fact question for the jury. *Rizzolo* v. *Public Service Co-ordinated Transport,* 111 *N. J. L.* 107; *Smith* v. *Adler's Millinery, Inc.,* 122 *Id.* 236; *Hansen* v. *Brown,* 123 *Id.* 223. It is otherwise only when such negligence appears as a necessary inference or when it is so clear that fair-minded men could not disagree about it."

Here the evidence at most raises a question of fact whether decedent and his assistants exercised reasonable care and prudence and as such the issue was one for the jury and not for the court. *Brooks* v. *Consolidated Gas Co., supra; Barnett* v. *Atlantic City Electric Co., supra; Robbins* v. *Thies, supra; Brice* v. *Atlantic Coast Electric Railway Co.,* 102 *N. J. L.* 288.

Similarly, whether the negligence of the appellants or the contributory negligence of Beck was the proximate cause of death, was also properly a question for the jury. *Gereghty* v. *Wagner,* 117 *N. J. L.* 174; *Robbins* v. *Thies, supra.*

It is next argued by the appellants that the facts show that the decedent assumed the risk of danger from the highly charged, uninsulated wires.

Although the physical surroundings that create the danger are known, a person will not be held to have voluntarily assumed a risk where the danger is unknown. *Burns* v. *Delaware and Atlantic Telegraph Co.*, 70 *N. J. L.* 745; *Sommer* v. *Public Service Corp.*, *supra;* *Walz* v. *Public Service Electric and Gas Co.*, *supra.* There is no voluntary acceptance of a personal hazard where the danger is latent and unknown.

The testimony of Behrend establishes his knowledge of the physical surroundings creating the danger but there is a distinct denial of knowledge of the danger which was produced by the uninsulated and highly charged wires. The question of assumption of risk is therefore purely factual and was properly for the determination of the jury. *Burns* v. *Delaware and Atlantic Telegraph Co.*, *supra;* *Kelly* v. *Bergen County Gas Co.*, 74 *N. J. L.* 604; *Walz* v. *Public Service Electric and Gas Co.*, *supra;* *Robbins* v. *Thies*, *supra.*

The trial court did not commit reversible error in permitting testimony of a witness, expert in electrical engineering, that according to good and safe engineering practice a dangerous condition was created under the circumstances of this case; that it should have been recognized and action taken to reduce the danger by insulation or to eliminate it by placing the wires underground.

Opinion testimony of expert witnesses as to the propriety and safety of a condition or appliance is admissible where such testimony is reasonably necessary to give the court and jury a fair or intelligent understanding of the subject-matter in controversy. *Excelsior Electric Co.* v. *Sweet*, 57 *N. J. L.* 224; reversed on other grounds, 59 *Id.* 441; 7 *Wigmore*, *"Evidence"* (3d ed., 1940), § 1923. Such testimony can be considered by the jury in reaching its verdict. *Cappuccio* v. *Hammonton Electric Light Co.*, *supra.* It has already been decided that expert testimony is admissible where it relates to care and caution proper in transmitting electrical current. *Heyer* v. *Jersey Central Power and Light Co.*, *supra.*

In the cases cited by appellants allegedly disallowing expert testimony it is noted either the witnesses were not experts, *In re McCraven*, 87 *N. J. Eq.* 28, or though experts, were interrogated upon matters outside the line of their special

knowledge, *Kuttner* v. *Central Railroad Co.*, 80 *N. J. L.* 11, or were testifying regarding matters not requiring specialized opinion. *Krieg* v. *Timken*, 102 *Id.* 307; *Taylor* v. *Kelvin*, 121 *Id.* 142; *Dodge* v. *Johns-Manville Sales Corp.*, 129 *Id.* 65. The exclusion of the expert opinion in *Bergen County Traction Co.* v. *Bliss*, 62 *Id.* 410, was proper since the hypothetical facts on which the opinion was based had not been previously established.

The testimony objected to was elicited from experts on a subject of a specialized nature. In view of the power company's contention that its installation complied with the general practice for the industry, expert testimony showing how that departed from good and safe electrical engineering practice was both relevant and competent.

The charge of the trial court to the jury was fully in accord with the applicable rules of law. Appellants' requests to charge relied upon for reversal, in each case were either contradictory to fact or law and consequently properly refused. Nor did the trial court commit error in refusing to instruct the jury that comparative degrees of negligence must not be considered. The charge on contributory negligence accurately analyzed the legal doctrine as it applies to this case and was adequate since it did not invite the jury to weigh the degree of contributory negligence. *McGarvey* v. *Atlantic City and Shore Railroad Co.*, 123 *N. J. L.* 281.

There being no merit to the remaining errors assigned for reversal, judgment is affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 14.

*For reversal*—None.