23 N.J. Super. 99 (1952)
92 A.2d 632
WILLIAM P. KEAVENEY, JR., PLAINTIFF-APPELLANT,
v.
NEWARK LADDER & BRACKET CO., INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1952.
Decided November 14, 1952.
*100 Before Judges McGEEHAN, JAYNE and CONLON.
Mr. Nathan Reibel argued the cause for appellant (Mr. John L. McGuire, attorney).
Mr. George Winne argued the cause for respondent (Messrs. Winne & Banta, attorneys).
The opinion of the court was delivered PER CURIAM.
The present appeal implicates the propriety of a judgment of involuntary dismissal granted by the trial judge at the conclusion of the plaintiff's case pursuant to Rule 3:50.
*101 The plaintiff sought the recovery of compensatory damages for the bodily injuries and incidental losses he sustained on December 14, 1949, in a mishap in which the arm of the center bracket supporting the planks of a scaffold upon which the plaintiff was standing while at work buckled, causing the plaintiff to be thrown to the ground.
The third count of the complaint upon which the plaintiff relied alleged that the bracket was so negligently, carelessly, improperly and defectively manufactured, designed and assembled that it was unsafe and insecure and not suitable for the purpose for which it was intended. The pretrial order reveals that the plaintiff "sues on the negligence of the defendant in the improper manufacture, design, assembly of the bracket and its component parts." At the inception of the trial it was agreed that "the defendant would be liable if three elements are proved," the second of which was "that the bracket was manufactured negligently."
There was testimony from which the jury could have logically drawn the inference that the defendant had manufactured and sold the bracket involved in the accident. The bracket itself was not produced at the trial, but another bracket of the same group was produced, and there was testimony that it was in all respects visibly identical except that a plate had been welded to one of the arm supports.
In our study of the case the rulings of the trial judge in relation to the proffered testimony of the witness Mendez particularly engages our attention. It is observed that after an inquiry concerning the education and experience of this licensed professional engineer, he was deemed qualified to testify at the trial as an expert. Nevertheless he was not permitted by the trial judge to testify concerning the improper design of a bracket of the type of the one that failed.
Specific references to the numerous questions propounded to this witness pertaining to that subject will not be undertaken. The objections to them were continuously sustained evidently for one or more of the following reasons: (a) that the alleged improper and faulty design and assembly of the *102 bracket was not in issue; (b) that the only issue in the case related to the "tensile strength" of the bracket; (c) that the witness had never seen the particular bracket that buckled; (d) that he had never personally manufactured or designed steel brackets for scaffolds; (e) that he "would have to be omnipotent" to state the grade and quality of steel commonly used in the construction of appliances of such a class because of the "thousands of factories turning out steel in this country."
Assuredly the alleged improper and deficient design of a scaffold bracket of the pattern of the one involved in the accident was projected by both the pleadings and the pretrial order. It would seem that a deficiency in the manufacture of such an appliance might inhere in its improper design as well as in its tensile strength. In consequence of the inability of the parties to produce the particular bracket at the trial, the one produced was by stipulation of counsel admitted in evidence as a sample and exemplification of it with its similarity to be determined by the jury from the relevant evidence. It is noticed that the expert was not permitted to be interrogated concerning the design of the missing bracket even with the assumption that it was made out of a grade and quality of steel possessing the maximum tensile strength.
"Opinion testimony of expert witnesses as to the propriety and safety of a condition or appliance is admissible where such testimony is reasonably necessary to give the court and jury a fair or intelligent understanding of the subject-matter in controversy." Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 277 (E. & A. 1948).
We conclude that the exclusion of the testimony of the expert witness in relation to the design of the bracket erroneously suppressed all proof of a material element of the plaintiff's alleged cause of action and injuriously affected his substantial rights.
Judgment reversed, with costs. New trial granted.