John MODLA, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 646–54.

United States District Court
D. New Jersey.

May 1, 1957.

Jacob R. Friedman, Jersey City, N. J., for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., for defendant, by Herman Scott, Asst. U. S. Atty., Passaic, N. J.

MODARELLI, District Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 1402(b). Defendant stipulated and conceded that on January 7, 1954, it owned and operated the Chapel Avenue Pier and ground adjacent thereto located in Jersey City, New Jersey. At said time and place, plaintiff, an employee of the stevedoring firm of Nacirema Operating Company, Inc., was working on the piers referred to under a contract between the Department of the Army and the company. Plaintiff alleges that defendant negligently maintained the pier area, which negligence caused him to sustain injuries for which he seeks $50,000. Defendant answered with denials, and the separate defenses of contributory negligence and assumption of risk.

The statute makes the law of the place where the negligent act or omission occurred govern any consequent liability. See Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. Damages are determined by the law of the state where the allegedly tortious act was committed subject to the limitations that the United States shall not be liable for interest prior to judgment or for punitive damages. Hatahley v. United States, 1956, 351 U.S. 173, 182, 76 S. Ct. 745, 100 L.Ed. 1065. This being so, it is necessary to review the law of New Jersey with reference to the right of recovery of an invitee-contractor's employee against the invitor-contractee when injury occurs on the latter's premises.

There are many decisions of New Jersey courts which hold that an injured invitee contractor's employee may recover against the invitor. The most frequently cited duty which the invitor owed to the employee and which was allegedly breached is the duty to furnish a safe place to work. As expressed by Mr. Justice Trenchard:

"The general rule is unquestioned that the owner or occupier of land who by invitation, express or implied, induces persons to come upon his premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes." Sommer v. Public Service Corp., 1910, 79 N.J.L. 349, 350, 75 A. 892, 893.

This principle of law was first clearly stated by Chief Justice Depue in the leading case of Phillips v. Library Co., 1893, 55 N.J.L. 307, 27 A. 478, and has been restated by the Supreme Court of New Jersey and the former Court of Errors and Appeals in numerous decisions. See Sefler v. Vanderbeek & Sons, 1916, 88 N.J.L. 636, 96 A. 1009; Mayes v. Splitdorf Electrical Co., 1920, 94 N.J.L. 460, 111 A. 10; Kappertz v. The Jerseyman, 1923, 98 N.J.L. 836, 121 A. 718; Beck v. Monmouth Lumber Co., 1948, 137 N.J.L. 268, 275, 59 A.2d 400.

It is necessary to set forth in some detail the facts to which the law must be applied, for while it is a rather simple exercise to find the applicable law, the fact-finding task, as usual in the tort claims before the court, presents the ponderable elements of negligence, credibility, and causation. On the day of the accident, plaintiff was directed to drive a piece of motor equipment known as a Hi-Lo from a garage to the dock. A Hi-

Lo is a fork-lift vehicle with two fork-like blades used to lift crates from the ground and move them from place to place. Plaintiff had operated such a vehicle previous to the accident, but not over the ground where the accident occurred. Plaintiff's version of the alleged accident is as follows:

"Q. Now, Mr. Modla, tell us exactly what happened with your vehicle from a point about a hundred feet from the tracks to the point of the accident? A. A hundred feet from the tracks, I was going along, driving at about 15 miles an hour; coming within, say, 20 feet of the tracks I slowed down to about eight, ten miles an hour. When I got to where the holes are, the front wheels hit the tracks, caused the Hi-Lo to bounce. And, simultaneously, when the rear wheels hit the holes, that caused the rear end of the Hi-Lo to tip up, causing the forward end, which would be the blades, to tip down, and, with that, the blades dug right into the rail." (Transcript, p. 49).

Plaintiff testified that he was thrown against the steering wheel and off the vehicle to the ground. The machine was unloaded at the time; the day was clear and the ground dry.[1] He further related that after recovering consciousness he was able to drive to the pier, but left at noon to go to a hospital where he underwent surgery for a ruptured viscera. Following his release from the hospital on January 24, 1954, plaintiff complained of back pains, dizziness, and nausea. He returned to the Medical Center, Jersey City, on February 24, 1954, and was operated on for repair of diaphragmatic hernia. Plaintiff did not return to work until about ten months following the accident. At the trial he complained of constant pain, an aggravated anxiety neurosis, and loss of sexual power.

There were no eyewitnesses to the accident.

There was considerable disagreement as to whether plaintiff was driving the Hi-Lo over a roadway or over ground referred to by the principal witness for the defendant as an "area." This witness, Mr. Makinen, was at the time in question the assistant general foreman whose duties included supervision of the grounds as far as construction and maintenance are concerned. It was his duty to detect any pits or depressions in the road or areas adjacent thereto and to direct repair of same. The installation comprises some 340 acres. This aspect of the evidence touches one of the defenses, namely, that the accident was caused by the fact that the plaintiff traveled across the unpaved storage area instead of availing himself of the paved roadway. Moreover, defendant asserts that the plaintiff did attempt to take a short cut over the unpaved area and in so doing did not take proper precautions. In opposition to this defense, plaintiff points to the case of Nolan v. Bridgeton & Millville Traction Co., 1907, 74 N.J.L. 559, 65 A. 992, which involved facts similar to the case at bar. In affirming a judgment for the plaintiff, the Court of Errors and Appeals observed that an old driveway had the appearance of frequent use and the public had used it as a "short cut." The unanimous Court of Errors and Appeals stated that a person "is not precluded from recovering damages for an injury caused by a danger placed by the owner in the road, solely on the ground that the owner had provided another way that was safe and might have been used by the plaintiff." But, the court continued: "In such a case it is a question of fact whether the road used by plaintiff has, by its accustomed use, with the knowledge of the defendant, become a way which by its use and appearance, indicated a way that persons so using the premises were invited to use." 74 N.J.L. 559, 562, 65 A. 992, 993.

I am not persuaded that the alleged accident happened how and where the plaintiff claimed. Plaintiff had posed in

---

[1]. Transcript, pp. 37, 38, 48.

a fork-lift truck on the site for the purpose of being photographed. He was asked to place the vehicle at the place of the accident.[2] The photographs, introduced in evidence, reveal that the railroad tracks were level with the grade of the paved roadbed. Physical facts make it unbelievable and impossible that the occurrence was caused as the plaintiff alleged on this level area. The operation of the fork-lift, rather than any defect in the area or roadway, was the proximate cause of the accident. It was incumbent on the plaintiff, in addition to proving negligence on the part of the defendant, to prove affirmatively that such negligence, if any, was the proximate cause of the accident. Without doubt the primary cause was the action of the plaintiff in losing control of the vehicle by driving too fast for conditions, and taking the course he did. On the basis of a personal inspection of the site of the accident, the court finds that the roadway was clearly distinguishable from the unimproved area. Neither its use nor appearance indicated that persons using the premises were to drive on the unpaved portion. I can only conclude that the plaintiff acted on motives of his own in following the route he took to reach the dock. Furthermore, the physical surroundings of his place of employment were known to him. He had worked at Caven Point for "two or three years" and had been in the vicinity of the accident "six or seven times."[3] During the two or three years of his employment at Caven Point, plaintiff worked almost daily. He is chargeable with such knowledge of the physical surroundings which mere observation would impart to a reasonably prudent person.

 It is settled law in New Jersey that "testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself. It must be such as the common experience and observation of mankind can approve as probable in the circumstances * * *." Spagnuolo v. Bonnet, 1954, 16 N.J. 546, 554–555, 109 A.2d 623, 628, quoting In re Perrone's Estate, 1950, 5 N.J. 514, 521, 76 A.2d 518. Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise or suspicion, is insufficient to sustain a judgment for the plaintiff.

Defendant's principal witness testified that he toured the depot daily and was diligent to make all necessary repairs of holes or depressions. I find that the defendant fulfilled that degree of care which comprehends a foresight and prevision having due and proper regard to reasonably probable contingencies.

 Even assuming that there had been some pits or depressions in the areaway on the date of the accident, that would be but one factor in the equation of causation. While the fact of causation is essential to liability, it does not alone determine it, since other considerations may prevent liability. Prosser on Torts, § 46. It has been said that contributory negligence does not automatically arise because the accident might have been avoided. It depends on the circumstances. Flanigan v. Madison Plaza Grill, Inc., 1943, 129 N.J.L. 419, 421, 30 A.2d 38; Beck v. Monmouth Lumber Co., 1948, 137 N.J.L. 268, 276, 59 A.2d 400. Contributory negligence involves some fault or breach of duty on the part of the individual and consists of a failure to use such care for his own safety as an ordinary prudent man in similar circumstances would use. Chief Justice Vanderbilt, in Hendrikson v. Koppers Co., Inc., 1953, 11 N.J. 600, 607, 95 A.2d 710, 714, in discussing contributory negligence and assumption of risk, quoted

---

2. Exhibit P–1. United States Army photograph with the following caption on the reverse side:
 "Photographs showing position of fork lift at scene of accident similar to one

involved in accident on 7 Jan 55 (Man on Fork Lift is same person involved in accident)."

3. Transcript, p. 6.

approvingly a definition by Mr. Justice Holmes:

> " 'Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. He is held to assume the risk upon the same ground. * * *' Schlemmer v. Buffalo, R. & P. R. Co., 205 U.S. 1, 12, 27 S.Ct. 407, 409, 51 L.Ed. 681 (1906)."

It is the second defense of the defendant that the plaintiff operated the vehicle at a very fast rate of speed across the unpaved storage area. In reviewing the evidence, the court concludes that the plaintiff was, in fact, driving too fast for existing conditions. Dr. Eleby Washington who attended the plaintiff testified that the latter reported to him that he was "driving very fast" at the time of the accident. Moreover, it appears that plaintiff failed to make proper observations.[4] The presumption that plaintiff exercised due care for his own safety is nullified by the evidence. I have given the plaintiff the benefit of every favorable inference that could be drawn from the testimony and the exhibits. I conclude that he was negligent and that his own failure to exercise ordinary care and watchfulness contributed to this happening. Under these circumstances a recovery would not be justified.

The foregoing opinion shall constitute findings of fact and conclusions of law as required by Rule 52, Fed.Rules Civ.Proc., 28 U.S.C.

An order may be submitted in conformity with the opinion herein expressed.

---

4. "Q. And you can see the entire roadway in front of you from a distance of twenty-five feet, is that right? A. You could see the entire roadway, yes.

"Q. You had an unobstructed view of this particular area before you approached it, did you not? A. Yes.

\* \* \* \* \* \*

"Q. And as you saw the tracks in front of you did you notice the roadway or the ground adjacent to the tracks? A. No, I didn't." (Transcript, pp. 52, 53.)